# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID JOSEPH HODSON, | Case No. 19-CV-2169 (PAM/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This action comes before the Court on Ground Four of Petitioner David Joseph Hodson's Second Amended Motion to Withdraw Plea, for Relief from Order, and Petition for Writ of Habeas Corpus (Dkt. 1 ("Petition")). For the following reasons, the Court recommends dismissing Ground Four of the Petition—and so this action—without prejudice.

## I.   BACKGROUND

### A.   Oregon Proceedings

On November 16, 2011, a grand jury in the U.S. District Court for the District of Oregon ("USDC-DOR") indicted Hodson on one count of arson under 18 U.S.C. § 844(i) and one count of making and possessing an unregistered destructive device under 26 U.S.C. §§ 5861(c), 5861(f), 5822, 5841, 5845, and 5871.  (*See* Oregon Dkt. 1 at 1-2.[1])

---

[1]   In what follows, references to the "Oregon Docket" or "Oregon Dkt." concern filings in *United States v. Hodson*, No. 3:11-CR-0462 (HZ) (D. Ore.).  Various Oregon Docket materials have not been included with the parties' filings in this action.  But these

On March 6, 2012, Hodson filed a "Notice of Intent to Present Insanity Defense." (*See* Oregon Dkt. 25 at 1.) This stated that Hodson "inten[ded] to assert a defense of insanity" and that an expert would testify that "at the time of the events described in the indictment, [Hodson] was insane in accordance with the test for insanity set [forth] in 18 U.S.C. § 17." (*Id.* at 1-2.)

On August 20, 2012, Hodson waived his jury trial rights and a court trial began. (*See* Oregon Dkt. 39 at 1.) At trial, the Government "stipulated to the admission into evidence" of a report by Hodson's expert, and further stipulated to "his opinion that, at the time of the charged offenses, [Hodson's] conduct was the result of a severe mental disease or defect such that [Hodson] was unable to appreciate the nature and quality of the wrongfulness of his acts." (Oregon Dkt. 40 at 1-2.) During the August 20, 2012 proceedings, the court found Hodson was competent and understood the proceedings based on Hodson's responses to questions about the lawyers' roles and the court's role. (Oregon Dkt. 127 at 5-6.) The court asked if Hodson understood his right to a jury trial and if his waiver of that right was knowing, intelligent, and voluntary. (*Id.* at 6-9.) The court explained to Hodson that both his lawyer and the government were proposing to proceed by way of a stipulated facts trial, that evidence regarding Hodson's mental state would be submitted verbally during the hearing, and that both sides would be arguing that

---

court records are publicly available, and this Court may take judicial notice of public court records. *See Bellanger v. Bosch*, No. 19-CV-2770 (PAM/BRT), 2020 WL 7632147, at *1 n.2 (D. Minn. Nov. 24, 2020) (citing *Bellino v. Grinde*, No. 18-CV-1013 (NEB/LIB), 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019)), *R.&R. adopted*, 2020 WL 7624840 (D. Minn. Dec. 22, 2020).

Hodson should be found not guilty only because he was insane at the time the event took place. (*Id.* at 7-8.)

On August 22, 2012, the USDC-DOR entered a judgment finding Hodson not guilty only by reason of insanity. (*See* Oregon Dkt. 40 at 2.) The court also found that Hodson had "recovered from his mental disease or defect to such an extent that, pursuant to 18 U.S.C. § 4243(b)(2), his conditional release under a prescribed regimen of medical, psychiatric or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another." (*Id.*) Based on these findings, the USDC-DOR ordered that Hodson "be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment under the management and supervision of the U.S. Probation Office." (*Id.*)

Over the next several years, Hodson had various problems following the terms of his conditional release. (*See* Dkt. 11 at 1, 9-10; Dkt. 27 at 3.) On August 15, 2017, the USDC-DOR revoked Hodson's conditional release based on 18 U.S.C. § 4243(g).[2] (*See,*

---

2      Under § 4243(g),

The director of a medical facility responsible for administering a regimen imposed on an acquitted person conditionally discharged under [§ 4243(f)] shall notify the Attorney General and the court having jurisdiction over the person of any failure of the person to comply with the regimen. Upon such notice, or upon other probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, the person may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or

3

*e.g.*, Oregon Dkt. 118 at 3.)  The court placed Hodson into the Attorney General's custody "for care and treatment at a suitable facility," and recommended, "based on [Hodson's] prior mental health treatment, that he be hospitalized at the Federal Medical Center, Rochester Minnesota ['FMC-Rochester'] until it is found that an alternative placement in the community is in his best interest."  (*Id.*)

In August 2018, Hodson emailed the USDC-DOR, stating that he wished "to withdraw [his] Not Guilty By Reason of Insanity plea" and asserting "ineffective assistance of [counsel]."  (Oregon Dkt. 123 at 1.)  He claimed that his plea decision had hinged on incorrect information that trial counsel had given him about the effects of "4243 status."  (*Id.*)  The USDC-DOR construed this as a motion to withdraw Hodson's guilty plea and appointed Robert Weppner to serve as Hodson's counsel.  (*See, e.g.*, Oregon Dkt. 125.)

In February 2019, Hodson filed the Petition in the USDC-DOR.  (*See* Oregon Dkt. 128.)  It presented four grounds for relief: (1) a motion under Federal Rule of Civil Procedure 60(b)(6); (2) a plea-withdrawal motion under Federal Rule of Criminal Procedure 12(d)(2)(B); (3) a motion to correct sentence under 28 U.S.C. § 2255; and (4) a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  (*See id.* at 3-6.)  Each ground sought to withdraw Hodson's 2012 not-guilty plea based on an ineffective assistance of counsel claim, namely that he was not advised that pleading not guilty by

---

> treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

18 U.S.C. § 4243(g).

4

reason of insanity ("NGRI") could result in indefinite incarceration in the federal prison system. (*See id.*) After initial briefing (*see* Oregon Dkt. 136, 141), the USDC-DOR ordered the parties to address the court's jurisdiction to address the Petition's § 2241 component (*see* Oregon Dkt. 143). That further briefing was complete on July 17, 2019. (*See* Oregon Dkts. 144-45.)

On August 7, 2019, the USDC-DOR issued an opinion and order addressing the Petition. (*See* Oregon Dkt. 146.) The court denied Hodson's motions under Civil Rule 60(b)(6), Criminal Rule 12(d)(2)(B), and 28 U.S.C. § 2255. (*See id.* at 3-4.) As for the Petition's § 2241 portion (Ground Four) the court concluded that it lacked jurisdiction over that portion because a § 2241 petition must be heard by the "custodial court."[3] (*Id.* at 5 (quoting *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000).) The court thus transferred Ground Four of the Petition to "the court of competent jurisdiction." (*Id.* at 6.) Because Hodson then resided (and still resides) at FMC-Rochester, the case was transferred to this District, which received the action on August 8, 2019.[4] (*See, e.g.*, Dkt. 1 at 1.)

---

[3] The court also indicated that because it is the court that committed Hodson, it "ha[d] jurisdiction to hear a motion for discharge under 18 U.S.C. § 4247(h)." (Oregon Dkt. 146 at 5 n.2 (citing *United States v. Guidry*, Nos. 97-CR-0059 (RE), 07-CR-1799 (RE), 2008 WL 3906792, at *2 (D. Ore Aug. 22, 2008)). The court further observed that Hodson could file such a motion in the USDC-DOR, but had not done so. (*See id.*)

[4] In August 2020, the USDC-DOR entered an order stating that the parties before that court had "received and reviewed a Risk Assessment Report" that "opine[d] that [Hodson's] unconditional release at this time would pose a substantial risk of bodily injury to another person or serious damage to the property of another due to his mental illness and, as such, he should continue to be committed pursuant to 18 U.S.C. § 4243." (Oregon Dkt. 160 at 1.) The court ordered Hodson to "remain in the custody of the

5

**B.      Petition**

As noted above, only Ground Four of the Petition is before this Court.[5] Ground Four asserts that Hodson is subject to the § 2241 remedy for at least two reasons: (1) that is he "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States" (*id.* at 5 (quoting 28 U.S.C. § 2241(c)(2))); and (2) that he "is in custody in violation of the Constitution or laws . . . of the United States" (*id.* (quoting 28 U.S.C. § 2241(c)(3); ellipses in Petition)). As relief, Hodson contends that he is entitled to "vacation of the Court's Order of August 15, 2017, vacation of the Court's judgment of August 22, 2012, and withdrawal of his [NGRI] plea." (*Id.* at 6.)

On January 3, 2020, the Court ordered Respondent to file an answer to the Petition's Ground Four and gave Hodson the option to reply. (*See* Dkt. 3 at 1-3.) The Court also appointed counsel for Hodson. (*See id.* at 2.) The United States and Hodson have filed a response and reply, respectively (*see* Dkt. 11, Dkt. 27), so briefing concerning the Petition's Ground Four is complete.

---

Attorney General for continued care and treatment pursuant to 18 U.S.C. § 4243(e)." (*Id.*) The court also ordered the Bureau of Prisons to "prepare a status report regarding [Hodson's] hospitalization and any progress made on a release plan by December 11, 2020, or earlier should the defendant's mental health progress warrant conditional release before that date." As of this Report and Recommendation's date, no further entries appear on the Oregon Docket.

[5]     Because of the transfer, the Petition at Oregon Dkt. 128 is, for practical purposes, the same document as the Petition at Dkt. 1 in this action. (*Compare* Oregon Dkt. 128, *with* Dkt. 1.)

## II.     ANALYSIS

The parties dispute whether this Court has jurisdiction to address Ground Four of the Petition. (*Compare* Dkt. 11 at 14-20, 25, *with* Dkt. 27 at 4-9.) Because jurisdictional questions are threshold questions, the Court will address this dispute at the outset. *See, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 430 (2004); *Willis v. United States*, No. 20-CV-0975 (PAM/DTS), 2020 WL 5505886, at *2 (D. Minn. Aug. 17, 2020), *R.&R. adopted*, 2020 WL 5500456 (D. Minn. Sept. 11, 2020).

The key points of contention are (1) whether the existence of a separate (and ostensibly adequate) statutory remedy—namely, the procedure established by 18 U.S.C. § 4247(h)—bars Hodson from using 28 U.S.C. § 2241; and (2) whether Hodson otherwise cannot use § 2241 because he seeks to "collaterally attack his decision to assert a successful insanity defense." *Archuleta v. Hedrick*, 365 F.3d 644, 648-49 (8th Cir. 2004). On both points, Respondent says yes; Hodson, no. As discussed below, the Court agrees with Hodson on the first point, but with Respondent on the second. The Court therefore recommends dismissing this action without prejudice for lack of jurisdiction.

**A.     Relevance of Statutory Remedy**

The parties dispute whether the availability of 18 U.S.C. § 4247(h) prevents Hodson from using § 2241. (*Compare* Dkt. 11 at 17-20, *with* Dkt. 27 at 4-6.) Respondent contends that § 2241 relief exists only where a petitioner has no other remedy; that § 4247(h) provides Hodson an "alternative route to discharge"; and so § 4247(h)'s availability bars Hodson's turn to § 2241. (Dkt. 11 at 17.) Hodson's main counter is that § 4247 "expressly provides" for habeas relief. (Dkt. 27 at 4.) In the

7

Court's view, the Eighth Circuit's *Archuleta* decision is dispositive in Hodson's favor. Describing *Archuleta* in some detail will make this clear (and will also clarify the next section's discussion).

In *Archuleta*, the Eighth Circuit reversed a district court decision to dismiss a § 2241 petition; the Eighth Circuit remanded the case with an instruction to transfer the case to another district. 365 F.3d at 646. Authorities in the U.S. District Court for the District of Utah ("USDC-DUT") had charged Archuleta with assaulting a federal officer. *See id.* He was later found "not guilty only by reason of insanity," and the USDC-DUT committed him to federal custody at the Federal Medical Center in Springfield, Missouri ("FMC-Springfield"). *Id.* Archuleta was conditionally released for a time, but in July 2002 the USDC-DUT revoked his release and recommitted him to FMC-Springfield. *See id.*

In August 2002 Archuleta filed a § 2241 petition in the U.S. District Court for the Western District of Missouri ("USDC-WDMO"). *See id.* at 648. Before service, a magistrate judge concluded that the petition "challeng[ed] 'the administration of involuntary medication and [Archuleta's] mental health commitment'" and recommended dismissing the petition for failure to exhaust administrative remedies. *Id.* (second brackets in *Archuleta*). Archuleta objected, but the district judge dismissed the petition without prejudice based on exhaustion. *See id.* Archuleta appealed and had the benefit of appointed counsel on appeal. *See id.*

The Eighth Circuit first addressed "the gravamen of Archuleta's pro se habeas petition." *Id.* at 647. The parties had apparently both treated the case as a "28 U.S.C.

8

§ 2241 conditions of confinement case," but the Eighth Circuit disagreed. *Id.* (citing oral argument).  After reviewing Archuleta's petition, the Eighth Circuit concluded that "its dominant theme is that [Archuleta's] continued detention . . . is unlawful and unconstitutional."  *Id.*  In other words, this was *not* simply a conditions-of-confinement case.  *Id.*  The Eighth Circuit then canvassed several arguments raised in the petition.

- First, it construed Archuleta as arguing that he could "establish his right to discharge by relitigating the initial finding that he was not guilty by reason of insanity."  *Id.* at 648.  The Eighth Circuit rejected this argument on the grounds that (1) "Archuleta may not collaterally attack his decision to assert a successful insanity defense," and (2) he was "in custody by reason of commitment orders entered under 18 U.S.C. § 4243(e) and (g)."[6]  *Id.*  The Court concluded that "this claim does not entitle [Archuleta] to habeas relief."

- Second, the Eighth Circuit stated that Archuleta was also arguing "that the statute pursuant to which he was committed is unconstitutional."  *Id.*  The Eighth Circuit noted that this claim was "cognizable in a § 2241 habeas proceeding," but "without merit" under caselaw upholding the statute's constitutionality.  *Id.*

- Finally, the Eighth Circuit attributed to Archuleta the argument that "he meets the standards for conditional or unconditional release under 18 U.S.C. § 4243."  The Eighth Circuit concluded that "[t]his [was] a cognizable claim" under § 2241, because it was a claim that Archuleta was in custody in violation of federal law.  *Id.*  But here the Court observed that "habeas corpus is an extraordinary remedy typically available only 'when the petitioner has no other remedy,'" and that "applicable statutes"— namely, § 4247(h)—expressly provided a procedure for the remedy Archuleta" sought as to this argument.  *Id.* at 648-49.

---

[6] As the Court understands (2), the idea is that Archuleta's commitment at the time of appeal was not strictly due to the USDC-DUT's initial commitment decision; rather, there had been an intervening release and revocation that led to Archuleta's incarceration at that time.

9

For purposes of the parties' dispute over § 4247(h)'s effect on the § 2241 remedy, the third bullet point above is the critical discussion. As this Court reads *Archuleta*, the Eighth Circuit concluded that to the extent that Archuleta was arguing that he met statutory conditions for release, nothing in § 2241's own wording barred him from trying to use that statute to bring the claim. In that sense, the claim was "cognizable." But under the judicial rule that habeas relief should apply only where no other remedy exists, § 4247(h) did bar Archuleta's otherwise-cognizable claim from proceeding, specifically because § 4247(h) provided a statutory remedy for individuals who believe that they meet the statutory conditions for release. And the Eighth Circuit put the point in jurisdictional terms, ordering the district court on remand to transfer the action to the USDC-DUT because that court had the jurisdiction to address a § 4247(h) motion. *See id.* at 649.

The Petition and Reply show that Hodson's argument here is not that he meets statutory conditions for release. Neither filing addresses whether Hodson's "release would . . . create a substantial risk of bodily injury to another person or serious damage of property to another due to a present mental disease or defect." 18 U.S.C. § 4243(d). Hodson's arguments target instead the circumstances under which the USDC-DOR found him not guilty only by reason of insanity. As the Court reads *Archuleta*, then, § 4247(h) may well bar petitioners from raising certain arguments under § 2241, but that bar does not include Hodson's arguments here. The Court thus agrees with Hodson that § 4247(h)'s existence does not prevent him from pressing his current claims under § 2241.

**B.      Availability of § 2241**

The remaining question is whether something else prevents Hodson from using § 2241 to press his present claim.  The Government suggests there is—namely, the *Archuleta* rule that a petitioner found not guilty by reason of insanity cannot "collaterally attack his decision to assert a successful insanity defense."  *Archuleta*, 365 F.3d at 648.  (*See* Dkt. 11 at 14-16.)  Hodson disagrees.  (*See* Dkt. 27 at 6-9.)

One might challenge this argument in at least two different ways.  First, one could argue that *Archuleta* is beside the point here because Hodson is not trying to collaterally attack his NGRI verdict.  Second, one could accept that Hodson is engaged in a collateral attack, but *Archuleta* is distinguishable.  As the Court reads the Reply, Hodson makes both arguments.  In both cases, however, the Court agrees with Respondent.

Consider first the idea that Ground Four does not collaterally attack Hodson's prior insanity defense.  Hodson says he is not trying to do so (*see, e.g.*, Dkt. 27 at 6) and repeatedly suggests that he merely challenges the "execution" of his sentence or commitment (*see, e.g.*, *id.* at 4, 6, 8).  But this is hard to square with the relief that Ground Four explicitly seeks.  After all, Hodson asks the Court to vacate the August 2012 order reflecting his NGRI verdict and withdraw his NGRI plea.  (*See* Dkt. 1 at 5-6.)  This is the stuff of collateral attacks.  Hodson cites numerous cases for the proposition that § 2241 is the appropriate remedy for a petitioner challenging the "execution" of a sentence.  This Court agrees; that proposition is unremarkable.  But none of Hodson's

11

cases suggest that his challenge here concerns "execution" in the relevant sense.[7]

This leaves the argument that *Archuleta* does not apply here because of some sort of distinction. As the Court reads Hodson's arguments, his claim here is that *Archuleta*'s rule applies only if a petitioner tries to "relitigate the evidence against him in the underlying charge." (Dkt. 27 at 8 (emphasis removed); *see also id.* (referring to "*Archuleta*'s limited holding with respect to sufficiency-of-the-evidence claims").) On this view of the *Archuleta* rule, a petitioner can use § 2241 to challenge an earlier NGRI plea as long as the challenge is not based on the sufficiency of the relevant evidence.

This Court has carefully considered whether *Archuleta* permits Hodson to challenge his NGRI plea based on ineffective assistance of counsel in connection with the plea (rather than the sufficiency of the evidence). The Court observes that *Archuleta* itself does not contain any limiting language. *See* 365 F.3d at 348 ("Archuleta's petition for § 2241 relief suggests that he may establish his right to discharge by relitigating the initial finding that he was not guilty by reason of insanity. **But Archuleta may not collaterally attack his decision to assert a successful insanity defense**.") (footnote omitted) (emphasis added). Moreover, in *Archuleta*, the Eighth Circuit cited a decision of the U.S. Court of Appeals for the District of Columbia, *Curry v. Overholser*, in which that court considered a habeas challenge based on the "appellant's statement that he was

---

[7]  *See Nichols v. Symmes*, 553 F.3d 647 (8th Cir. 2009) (suggesting that § 2241 would be appropriate in case where government made certain agreements as part of plea negotiations, then failed to follow through); *Matheny v. Morrison*, 307 F.3d 709 (8th Cir. 2002) (concerning prisoner challenges of Bureau of Prison rules on paying financial restitution obligations); *Peak v. Petrovsky*, 734 F.3d 402 (8th Cir. 1984) (suggesting that § 2241 remedy is appropriate when government violates plea-negotiation agreements).

12

not informed that a possible alternative to his commitment was to ask for a new trial." 278 F.2d 137, 139 (D.C. Cir. 1960). The D.C. Circuit explained:

> But this is not a case in which it can be said that Curry has been committed to [the institution] by reason of the acts of his attorney rather than his own acts. He was present in the trial court when the defense of insanity was raised; present when the psychiatrists testified as his witnesses in the way he desired them to testify; and present when his counsel urged the court to direct a verdict of acquittal by reason of insanity. Having thus elected to make himself a member of that 'exceptional class' of persons who seek verdicts of not guilty by reason of insanity, he cannot now be heard to complain of the statutory consequences of his election.

*Id.* at 139-40 (footnote and citations omitted). The same circumstances are present here: Hodson was at the hearing where the defense of insanity was raised, when evidence of his mental state was offered, and when his lawyer urged the court to find him NGRI.

The Court further notes that Chief U.S. District Judge John R. Tunheim found in *Ruston v. Jett* that *Archuleta* precluded a habeas petitioner from challenging a NGRI plea on the grounds that the plea "was involuntary because it was 'made under threats, duress and coercion.'" No. 14-CV-1891 (JRT/FLN), 2015 WL 1223669, at *2 (D. Minn. Mar. 17, 2015). In doing so, Chief Judge Tunheim distinguished a case from the District of Connecticut, *Duperry v. Kirk*, 563 F. Supp. 2d 370 (D. Conn. 2008), because *Duperry* involved a state court's factual finding that an NGRI plea was not knowing and voluntary due to a procedural problem (compared to Ruston's "general allegations" that the U.S. Attorney's Office was a "tool of crime and fraud by the State of Texas") and because *Duperry* was "persuasive at best" in view of *Archuleta*. 2015 WL 1223669, at *2-3. Hodson's allegations here are more specific than Ruston's, but *Duperry* remains only persuasive authority.

13

Consequently, the Court finds that *Archuleta* applies here and the Court may not consider Ground Four of the Petition.[8]  The Court recognizes that this recommendation appears to leave Hodson with no avenue for raising his ineffective assistance of counsel claim, but concludes that *Archuleta*'s broad language requires this result.  The Court therefore recommends denying Ground Four of the Petition for lack of jurisdiction.  Because Ground Four is the only part of the Petition before this Court, the Court also recommends dismissing the Petition itself.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED THAT:**

1. Ground Four of Petitioner David Joseph Hodson's Second Amended Motion to Withdraw Plea, for Relief from Order, and Petition for Writ of Habeas Corpus (Dkt. 1 ("Petition")) be **DENIED WITHOUT PREJUDICE** for lack of jurisdiction; and

2. The Petition be **DISMISSED**.

Dated: February 2, 2021                    *s/Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge

---

[8] The Court notes that Hodson was conditionally released for some time before his term of conditional release was revoked on August 15, 2017 pursuant to 18 U.S.C. § 4243(g).  (*See* Oregon Dkt. 118 at 3.)  That revocation led to Hodson's commitment at FMC-Rochester.  (*Id.*)  This means that under *Archuleta*, Ground Four would not entitle Hodson to relief.  *See Archuleta*, 365 F.3d at 648 ("In any event, [Archuleta] is in custody by reason of commitment orders entered under 18 U.S.C. § 4243(e) and (g).  Thus, this claim does not entitle him to habeas relief."); *see also Phelps v. United States*, No. C 11-3211 LHK PR, 2011 WL 3844208, at *2 (N.D. Cal. Aug. 30, 2011) ("Moreover, because Petitioner is no longer in custody by reason of his original commitment, but by reason of commitment orders entered thereafter, he is not entitled to relief based on alleged errors in his original commitment.").

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).